**David Lee BREWER, Appellant,**

v.

**Warden Charles WOLFF, Jr., Appellee.**

**No. 75–1294.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1975.

Decided Jan. 20, 1976.

---

Richard L. Schmeling, Lincoln, Neb., for appellant.

Harold S. Salter, Asst. U. S. Atty., Lincoln, Neb., for appellee.

Before GIBSON, Chief Judge, and STEPHENSON and WEBSTER, Circuit Judges.

GIBSON, Chief Judge.

Petitioner, David Lee Brewer, was convicted in the District Court of Douglas County, Nebraska, of possessing a firearm after having been previously convicted of a felony and of being an habitual criminal. His conviction was affirmed on direct appeal by the Supreme Court of Nebraska. *State v. Brewer*, 190 Neb. 667, 212 N.W.2d 90 (1973). Petitioner now appeals from the denial of his federal petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (1970). His sole contention is that the firearm serving as the cornerstone of the State's case was seized in an unlawful, warrantless search of an automobile. We affirm the District Court's[1] conclusion that the search was lawful and denial of the writ.

Early in the evening of April 8, 1972, an off-duty police officer in Omaha, Nebraska, Sergeant Pfeffer, was told by one Randy Scott Gore, a tipster whom Pfeffer had known for six to eight months, that a robbery might take place in an Omaha bar that evening. Sergeant Pfeffer considered Gore reliable for the reason that information Gore had supplied in the past had corresponded with facts already established by inde-

---

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

pendent police investigation. No arrests, however, had been made as a result of Gore's prior tips. Sergeant Pfeffer arranged for Gore to meet with Sergeant Swanson of the undercover intelligence division in the neighborhood where the robbery was to take place. In a fifteen or twenty minute meeting, Gore advised Sergeant Swanson that three, possibly four, persons would rob a certain neighborhood bar at about 9:30 that evening.

Gore identified two of the four persons as his neighbors, Warren Dittrich and David Lee Brewer, and the third as an acquaintance named Powell. The fourth man he identified only as an alleged escaped convict. Gore told Sergeant Swanson that the robbers planned to use two cars, a blue 1965 or 1966 Oldsmobile and a bronze Buick, both bearing Nebraska license plates, and that they would be armed with a shotgun and two handguns he had seen in their possession. Gore had been asked by the prospective robbers to participate in the crime by creating a diversion elsewhere in the same neighborhood for the purpose of occupying the police while the robbery was in progress. Gore reported that all of the above information was based upon his personal observation and conversations with the prospective robbers.

Sergeant Swanson relayed the information to uniformed police officers in the area. The bar was placed under surveillance but it was not robbed that evening. Earlier, while Swanson and Gore had been engaged in their conversation on the street next to Sergeant Swanson's unmarked car, Gore identified a passing car as the blue Oldsmobile being used by the suspects, but he could not see the occupants well enough to identify them. Gore promptly departed to rendezvous with the prospective robbers. He later reported that he was quickly quizzed by them about his suspicious contact with

Sergeant Swanson but apparently he offered them a satisfactory explanation, for he was further instructed to proceed with the planned diversion by throwing rocks through a nearby store window. Gore promptly returned to inform Sergeant Swanson what the prospective robbers had told him to do.

Meanwhile, at approximately 9:30 p. m. uniformed officers Gutchewsky and Rockwell were instructed by radio to maintain surveillance of the residence of suspect Warren Dittrich, to be assisted by two other officers stationed in a nearby police cruiser. At about 11:30 p. m. petitioner drove up in a bronze Buick, honked his horn, waved at the officers and turned toward Dittrich's house. The officers, noting that Brewer's car matched the description relayed earlier from Gore, ordered him to stop and step out of the car. Brewer emerged from the car as instructed. They asked him for a driver's license and auto registration but he produced no identification. Rather, he orally identified himself as Clarence Brewer (petitioner's brother) and gave an evasive explanation of his presence in the area, saying he was going to visit a girlfriend down the street but refusing to give her name and saying he was unable to give her address.

Officer Gutchewsky told his partner, Officer Rockwell, that he had been acquainted with David Brewer in the past and believed he recognized the occupant of the vehicle as David Brewer—one of the suspects identified by tipster Gore—not his brother Clarence Brewer. Petitioner was then placed under arrest for giving false information to an officer in violation of Neb.Rev.Stat. § 28–744 (Supp.1972),[2] and for loitering and prowling. The officers handcuffed him and placed him in the back seat of the police cruiser. Officer Rockwell then quickly searched Brewer's car, finding an axe handle, gloves and a billfold containing

---

**2.** The statute provides in part that:

It shall be unlawful for any person to furnish information he knows to be false to any law enforcement officer * * * or other official, with the intent to * * * impede an investigation of an actual criminal matter * * *. Any person violating the provisions of this section shall be guilty of a misdemeanor * * *.

David Brewer's identification. The brief search was interrupted, however, when word was received that a second car, a blue Oldsmobile, was approaching. The second car was stopped by the other police officers one-half block away and was found to contain suspects Dittrich and Powell. Officer Rockwell remained to guard Brewer while Officer Gutchewsky and the other officers went to search the second car. After finding a sawed-off shotgun and a handgun, they placed Dittrich and Powell under arrest.

At this point, Officer Gutchewsky and his partner realized that one of the handguns Gore had said would be used in the robbery had not yet been found. They so informed their field lieutenant who had by then arrived on the scene. The lieutenant ordered Brewer taken to the police station and Brewer's car carefully searched and guarded pending the arrival of a tow truck. Without obtaining a search warrant, another police officer, Kelly, carefully searched Brewer's car at the scene of the arrest and found a .357 magnum handgun with ammunition lying on top of the glove compartment up under the dashboard. The weapon served as the basis for petitioner Brewer's conviction.

■■■ Petitioner contends that the search was unconstitutional under *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), and cannot be justified by any of the classic exceptions to the general · Fourth Amendment prohibition against warrantless intrusions.[3] However, the general proscription of the Fourth Amendment is against unreasonable, not warrantless, searches. The main thrust of petitioner's argument is directed toward the final, complete search of his Buick that occurred after the late arriving Oldsmobile had been stopped, Brewer, Dittrich and Powell arrested, and two of the three weapons discovered. Petitioner virtually concedes, and we hold, that the initial stop of his car by Officers Gutchewsky and Rockwell was constitutionally permissible. The stop was merely for investigative purposes and was based upon the officers' reasonable suspicion that criminal activity was afoot. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■■ In assessing police justifications for arrests or intrusions of a type less offensive than full arrests, we take an objective view of all the facts and may evaluate the knowledge of all the officers collectively. *White v. United States*, 448 F.2d 250, 254 (8th Cir. 1971), cert. denied, 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972). The District Court properly concluded that the tipster's prior accurate information and matching description of Brewer's car, coupled with the car's proximity to the residence of one of the identified alleged participants, were enough to arouse reasonable suspicion for the investigatory stop. *Orricer v. Erickson*, 471 F.2d 1204, 1207 (8th Cir. 1973); *United States v. Harflinger*, 436 F.2d 928, 932 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). Thereafter,

---

**3.** Specifically, petitioner contends that (1) as the vehicle was stopped by four police officers with two patrol cars on a city street, not an open highway, and petitioner handcuffed and taken into custody in a locked police car, his vehicle was no longer sufficiently "mobile" to fall within the "automobile exception" of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); (2) the search, though following soon after an arrest, was too broad in scope to fall within the immediate area from which petitioner might have gained possession of a weapon or destroyed evidence—particularly as he was handcuffed and locked in the patrol car—thus rendering it unjustifiable as a "search incident to the arrest,"

cf. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); (3) neither the weapon nor any contraband was within the "plain view" of the police officers, cf. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); (4) the area under the dashboard was not reasonably within the scope of a standard "inventory search," *United States v. Lawson*, 487 F.2d 468 (8th Cir. 1973); *State v. Brewer*, 190 Neb. 667, 675, 212 N.W.2d 90, 95 (1973); and finally (5) nothing occurred that would make the "forfeiture exception" applicable. Cf. *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Brewer's giving of false information to the questioning officers provided them with probable cause to arrest him. *Orricer v. Erickson, supra* at 1207; *United States v. Harflinger, supra* at 934. Petitioner does not challenge the immediate, brief search of his car that was interrupted by the arrival of the other vehicle. His primary attack is upon the ultimate search that produced the handgun.

The Government contends that in addition to the officers' reasonable suspicion justifying Brewer's initial detention and questioning, probable cause for the subsequent search of his car became manifest from further developments at the scene. The presence of both cars, three of the four suspects and two of the three weapons served to verify the tip and support the officers' belief that criminal activity was underway. However, analysis of the justification for such a warrantless automobile search must be split into two inquiries: first, whether the circumstances gave the officers probable cause to search the car and, second, whether sufficient exigencies were present to justify an immediate search without waiting to obtain a warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 463–64, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

█ After a careful review of the instant record, we believe the developments at the scene serving to corroborate Gore's tip were sufficient to give the officers probable cause to search Brewer's car in the belief that it contained a third weapon. An appropriate framework for analysis is provided by the two-pronged touchstone of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which, in the circum-

stances, we believe was satisfied by Gore's tip.

The first *Aguilar* prong was satisfied by Gore's personal communication of the underlying circumstances from which it could be concluded that criminal activity was planned. Secondly, knowledge of circumstances from which the officers could conclude that Gore was reliable—the remaining *Aguilar* prong—was present as well in Gore's tip. Sergeant Pfeffer knew that Gore had supplied the police with accurate information in the past. Such knowledge can be imputed in turn to the other arresting officers. *United States v. Regan*, 525 F.2d 1151, 1154 (8th Cir. 1975).

Moreover, Gore's reliability was bolstered by the officers' on-the-scene verification of the substance of his tip. *Cf. Spinelli v. United States, supra* at 415. Both cars that Gore had identified as being involved in the robbery plot were present at the scene; three of the participants named by Gore to be parties to the plot had been arrested while occupying the described cars in the vicinity of one suspect's reported residence; and, most significantly, two of the three weapons reported by Gore to be used in the plot had been found. Thus, only one key fact alleged by Gore remained to be established: the existence and location of the third gun had yet to be determined. *See Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The District Court found, and we agree, that the police, after arresting Dittrich and Powell and discovering two weapons, had a "sound belief" that the third weapon mentioned in the tip might still be in the petitioner's car. Thus, probable cause for the thorough[4] search of Brewer's car was present. *See Cady v. Dombrowski*, 413 U.S. 433, 448, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).[5]

---

4. The fact that the search extended to the top of the glove compartment under the dashboard did not render it unreasonably broad in scope. This place of secreting contraband and weapons is one generally known by the police to be commonly used for that purpose by persons engaged in crime. It can by no means be considered an unusual place to check as part

of a thorough search. *See, e. g., United States v. Nieto*, 510 F.2d 1118 (5th Cir. 1975).

5. In *Cady*, a Chicago policeman was arrested for drunken driving after suffering a one-car accident in his rented car near a small town in Wisconsin. The arresting officer had the car towed to a garage seven miles from the police

■ Moreover, under the circumstances, the police were justified in proceeding with the search at the scene of the arrest without waiting to obtain a warrant. *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Given probable cause on the scene, no constitutional distinction can realistically be drawn between seizing a car until the probable cause issue can be presented to a magistrate and conducting an immediate search without a warrant:

> Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. *For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.* (Emphasis added.)

*Chambers v. Maroney, supra* at 51–52, 90 S.Ct. at 1981. *See also Coolidge v. New Hampshire*, 403 U.S. 443, 504–05, 91 S.Ct. 2022, 29 L.Ed.2d 564 (Black, J., concurring and dissenting).

As probable cause to search was present in the instant case, the immediate warrantless search at the scene of the arrest was permissible despite the fact that the danger of losing the car had been substantially diminished by quickly placing the driver in custody. *United States v. Harflinger*, 436 F.2d 928, 934 (8th Cir. 1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971).

Recently, in *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), the Supreme Court upheld a station house search of a car that had been towed from the scene of the arrest in midafternoon. There was no indication that an immediate search of the car at the scene would have been either unworkable or unsafe for the arresting officers or that waiting for a warrant before proceeding with the search at the station house would have been impractical. *Cf. Chambers v. Maroney, supra*, 399 U.S. at 52, n. 10, 90 S.Ct. at 1981 n. 10. The Court in *White* held that as in *Chambers*, " '[t]he probable cause factor' that developed on the scene [justifying the search] 'still obtained at the station house,' " and the search was permitted without the delay necessary to obtain a warrant.[6] 423 U.S. at 68, 96 S.Ct. [304] at 305. Applying the reasoning of *Chambers* and *White* to the facts of the instant case, we agree with the District

---

station, where it was left outside unattended. Early the next day, an officer, believing that Chicago police officers were required by regulation to carry arms at all times, conducted a warrantless "car taking" search of the car in the belief that he should take custody of the policeman's service revolver which might otherwise be vulnerable to vandals. In the trunk the officer found several bloodied items leading to the policeman's conviction for murder. The Court held that in view of the officer's reasonable belief that he would find the unlocated service revolver in the trunk, the search was not unreasonable. 413 U.S. at 448, 93 S.Ct. 2523. The circumstances of the *Cady* search are roughly analogous to those of the instant case. There, as here, the vehicle was not in custody nor on the premises of the owner and had been located where it was by lawful police action. The officer had a sound belief that an off-duty policeman would be carrying a service revolver and that under the circumstances it might be located in the trunk of his rented car.

6. In the instant case, as we have noted, probable cause to search Brewer's car developed at the scene. The police searched the second car and found two of the three guns they had been told to expect in the suspects' possession. This development gave them probable cause to believe a third might be in the petitioner's car.

In *Texas v. White* the suspect was arrested while attempting to pass bad checks at a drive-in bank window. A bank employee and a policeman observed the suspect attempting to "stuff" something between the seats. In a later search, four wrinkled checks similar to those he had passed at another bank were found in the car.

Court's conclusion that the warrantless search of Brewer's car at the scene of the arrest was constitutionally permissible.

The judgment of the District Court is affirmed.