**UNITED STATES of America, Plaintiff,**

v.

**Theodore Eugene KELLY, Defendant.**

**Crim. A. No. 75CR36–W–3.**

United States District Court, W. D. Missouri, W. D.

June 16, 1976.

---

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., for defendant.

FINAL JUDGMENT OF CONVICTION ON ALL COUNTS, ORDER DENYING MOTIONS BY DEFENDANT AND GOVERNMENT TO RECONSIDER OCTOBER 3, 1975, "ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S 'MOTION TO SUPPRESS PHYSICAL EVIDENCE,'" AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ALL OF THE GOVERNMENT'S EVIDENCE

WILLIAM H. BECKER, Chief Judge.

On January 23, 1975, defendant was indicted on thirteen counts of interstate transportation of falsely made securities in

violation of Sections 2 and 2314, Title 18, United States Code.[1] On April 2, 1975, defendant moved to suppress all physical evidence seized in warrantless searches of his motel room and leased automobile at the time of his arrest, and all evidence seized from his leased automobile in a warrantless search occurring on the day following his arrest. On July 7, 1975, a plenary evidentiary hearing on defendant's motions to suppress was held. On October 3, 1975, defendant's motions were granted in part and denied in part. Thereafter defendant waived trial by jury, and a nonjury trial was commenced on October 23, 1975. The trial was continued without objection and resumed to completion on April 21, 1976.

Three issues currently remain to be decided. First both defendant and the government have requested reconsideration of rulings made in the October 3, 1975, "Order Granting In Part and Denying In Part Defendant's 'Motion to Suppress Physical Evidence.'" Second, defendant has moved to suppress all of the government's evidence under the "fruit of the poisonous tree" doctrine, alleging that all evidence linking defendant to the offenses charged in the indictment was obtained as a result of a search found to have violated the Fourth Amendment. Finally, if the foregoing motions by defendant are denied, it must be determined whether the evidence proves beyond a reasonable doubt that defendant committed one or more of the offenses charged in the separate counts of the indictment.

I. *Motions to Reconsider Rulings on Defendant's Motions to Suppress.*

The facts concerning the warrantless searches of defendant's motel room and leased automobile at the time of his arrest, and of defendant's leased automobile on the day following his arrest, by officers of the Blue Springs, Missouri Police Department are fully set forth in the October 3, 1975, "Order Granting In Part and Denying In Part Defendant's 'Motion to Suppress Physical Evidence.'" This order is incorporated herein by reference. Neither defendant nor the government takes exception to any of the findings of fact, and therefore the findings of fact will not be repeated. However, defendant excepts to the legal conclusion that a warrantless search of the trunk of defendant's leased automobile at the time of his arrest did not violate the Fourth Amendment. Furthermore, the government suggests that the decisions in *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), and *Brewer v. Wolff,* 529 F.2d 787 (8th Cir. 1976), require reconsideration of the ruling that the second warrantless search of defendant's leased automobile conducted on the day following defendant's arrest violated the Fourth Amendment.

A. *Defendant's Motion to Reconsider.*

During the first warrantless search of defendant's automobile at the time of his arrest on January 9, 1975, numerous pieces of false identification, a check protector, and a typewriter were found in the trunk of the automobile. The officer conducting the search seized the false pieces of identification, but placed the check protector and typewriter in defendant's motel room. The check protector and typewriter were recovered from the motel room the following day, and were later determined to have been used in cashing all but one of the stolen American Express money orders mentioned in the indictment.

In denying defendant's motion to suppress the check protector and the typewriter, it was held that (1) the initial intrusion into the automobile to find evidence of the vehicle's ownership was justified by defendant's false and evasive answers to questions concerning the ownership of the vehicle; (2) the intrusion into the trunk to search for a

---

1. Section 2314, Title 18, United States Code, provides in pertinent part:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited . . .

. . . . .

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

weapon was justified by the discovery of a loaded .22 revolver in the glove compartment and a live round of .38 caliber ammunition in plain view in an open ash tray; (3) the check protector and typewriter were discovered inadvertently in plain view in the trunk; and (4) the legality of the seizure of the check protector and typewriter was not affected by the fact that they were placed in defendant's motel room and not recovered until the following day. In his request to reconsider that ruling, defendant contends that the initial intrusion into the automobile without a warrant was not justified under the "automobile" exception to the warrant requirement because information about the true ownership of the vehicle was available to the officers at the time and because exigent circumstances which would have prevented the officers from obtaining a warrant did not exist; and that seizure of the check protector and typewriter cannot be justified under the "plain view" exception because they were not immediately incriminating. Each of defendant's contentions will be separately considered.

■ Defendant's first contention is that because information from which the true ownership of the automobile defendant was driving could be determined was available elsewhere to the officers who were arresting the defendant on an arrest warrant; and because the automobile had not been reported stolen or used in the commission of a crime; the initial intrusion into the vehicle could not be justified as a search for proof of ownership. The evidence shows that at the time the arresting officers asked defendant about the ownership of the vehicle, they had been advised only of the automobile's license number and that it was owned by a "rental agency." They did not know the true ownership of the automobile, although they could have obtained that information by a computer check of the license number or by review of the Lee's Summit accident report provided the Blue Springs Police Department. They first became aware of the vehicle's true owner, A.V.E. Enterprises, only through a computer check run after defendant gave false and evasive answers to their inquiries about the

automobile's ownership. It is concluded that in view of defendant's false and evasive answers to questions about the automobile's ownership, the fact that the officers could have learned of the vehicle's true ownership prior to asking defendant, or that they determined the true owner of the vehicle after defendant gave evasive answers, is immaterial. Defendant's evasive answers gave rise to a reasonable and legitimate suspicion that the automobile may have been stolen, and the officers were reasonably justified in entering the automobile to seek the vehicle's registration. *United States v. Brown*, 535 F.2d 424 (8th Cir. 1976); *See also: United States v. Sifuentes*, 504 F.2d 845 (4th Cir. 1974). Therefore the initial search of the automobile to find proof of ownership was not unreasonable.

■ Defendant's second contention is that exigent circumstances justifying a warrantless search did not exist because defendant was in custody and one of the arresting officers could have obtained a search warrant while the other officer remained with the automobile. Defendant cites *Haefeli v. Chernoff,* 394 F.Supp. 1079 (D.Mass.1975), in which the opportunity for such a course of action was held to render a warrantless search of an automobile a violation of the Fourth Amendment. This case has been reversed by the First Circuit which expressly rejected the holding of the district court. *Haefeli v. Chernoff,* 526 F.2d 1314 (1st Cir. 1975). The fact that the driver of an automobile has been placed in custody and no longer has access to an automobile, does not require seizure of the automobile pending the obtaining of a search warrant, if justification for an initial intrusion exists as in this case. *Brewer v. Wolff,* 529 F.2d 787 (8th Cir. 1976). *See also: Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

Defendant's final contention is that the "plain view" exception to the warrant requirement is inapplicable to seizure of the check protector and typewriter because

they were not "immediately incriminating" objects. In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court summarized the "plain view" exception in the following language:

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583.

The United States Court of Appeals for the Eighth Circuit has deduced from this language three requirements for the "plain view" exception:

> ". . . it must be shown (1) that the initial intrusion which afforded the authorities the 'plain view' was lawful; (2) that the discovery of the evidence was inadvertent; and (3) that the incriminating nature of the evidence was 'immediately apparent.'"

*United States v. Wilson,* 524 F.2d 595, 598 (8th Cir. 1975). *Accord: United States v. Clark,* 531 F.2d 928 (8th Cir. 1976); *United States v. Williams,* 523 F.2d 64 (8th Cir. 1975).

In this case, the initial intrusion into the trunk of defendant's automobile was justified as a search for a weapon, and the discovery of the check protector and typewriter was inadvertent, Although defendant was not under suspicion of having committed any specific offenses involving the check protector and typewriter prior to the search, the fact that those instruments were found with numerous false pieces of identification would have led a reasonable police officer to conclude that they may have been used as instrumentalities of a crime and were thus "immediately incriminating." Obviously the discovery of the incriminating evidence was inadvertent. The mere fact that the officer who conducted the search of the trunk of the automobile did not immediately recognize the incriminating character of those instruments is immaterial because the evidence must be considered as it would have appeared to a reasonable police officer. *Brewer v. Wolff, supra.* Further the fact that the particular officer was temporarily slow in realizing the incriminating nature of the check protector and typewriter does not render the seizure thereof unreasonable.

It is therefore concluded that the grounds for defendant's motion to reconsider the October 3, 1975, order are without merit.

## B. *Government's Motions to Reconsider.*

The government has urged that the decisions in *Texas v. White, supra,* and *Brewer v. Wolff, supra,* handed down since October 3, 1975, require reconsideration of the ruling that the second warrantless search of defendant's automobile, occurring on the day after defendant's arrest at John's Body Shop in Blue Springs while defendant was in custody, violated the Fourth Amendment. In *Texas v. White, supra,* the Supreme Court held that when probable cause existed for a warrantless search of an automobile at the scene of arrest, a warrant was not required for a search of the automobile at the station house approximately one hour later after the vehicle was driven there by one of the officers. In *Brewer v. Wolff, supra,* the United States Court of Appeals for the Eighth Circuit upheld a warrantless search for a weapon at the scene of arrest.

There is a degree of plausibility to the contentions of the government, and indeed this is a close case. However, the searches in *Texas v. White, supra,* and *Brewer v. Wolff, supra,* are distinguishable on their facts from this case. The searches in those cases took place either at the station house where the vehicle had been taken by police or at the scene of the arrest, occurred soon after the arrests, and were justified as searches for evidence or weapons. In this case, the search took place at a private garage where the vehicle had been taken for safekeeping and occurred on the day following the arrest. No justification for the search was given. There was ample time to procure a warrant. Therefore, it is concluded that the cases cited by the government do not require reconsideration of the ruling.

## II. *"Fruit of The Poisonous Tree" Issue.*

During the second search of defendant's automobile at John's Body Shop which was found to have been conducted in violation of the Fourth Amendment, several false pieces of identification in the name of Jack B. Montgomery and Carolyn Montgomery and an American Express money order in the same series as those in the indictment were found in the glove compartment. Defendant alleges that prior to this discovery, there was no investigation of defendant or anyone else in progress in connection with the offenses charged in the indictment, and that all of the evidence linking defendant to the offenses was obtained as a result of this illegal search and should have been suppressed under the "fruit of the poisonous tree" doctrine. The government admits that the evidence discovered in the illegal search accelerated the investigation of the offenses charged in the indictment, but contends that it had in its possession sufficient information to implicate defendant in the offenses which was independent of the illegally seized evidence to render the "fruit of the poisonous tree" doctrine inapplicable. The following findings of fact and legal conclusions are made concerning this issue.

### A. *Findings of Fact.*

On January 10, 1975, the day following defendant's arrest by Blue Springs police on the Lee's Summit traffic warrant of arrest, Detective Gary Ahern conducted a warrantless search of defendant's leased automobile at John's Body Shop in Blue Springs where it had been taken for storage. In the glove compartment of the automobile, Detective Ahern found a gate pass from the Kodak Company issued to Jack B. Montgomery with a color photograph of defendant on its face; a State Farm Insurance Company Identification Card issued to Jack B. Montgomery; a fictitious Missouri Operator's License issued to Jack B. Montgomery; three credit cards issued to Carolyn Montgomery; and an American Express money order numbered CH715737305. This search was held to be in violation of the Fourth Amendment and all the evidence seized in this search was suppressed on October 3, 1975.

Following the search by Detective Ahern, Sergeant M. C. Little of the Blue Springs, Missouri Police Department communicated by telephone with John H. Oliver of the American Express Office in Denver, Colorado, to determine whether the money order found had been stolen. Oliver told him that he would check and return his call. Later, Oliver called back and informed Sergeant Little that the money order had been stolen along with a number of others from a Seven-Eleven store in Colorado Springs, Colorado, on July 10, 1968. Sergeant Little then notified the Federal Bureau of Investigation (hereinafter "F.B.I.") in Kansas City, Missouri, about the stolen money order. Agent Robert L. Sypult of the F.B.I. received a full report concerning the evidence discovered by Detective Ahern that day at the Blue Springs Police Department.

It is not seriously controverted that the evidence obtained by Agent Sypult as a result of the illegal search of defendant's automobile accelerated the F.B.I.'s investigation of the offenses charged in the indictment. Indeed the evidence shows that the F.B.I. in Kansas City was not notified by American Express about the theft of the money orders which are the basis for each count in the indictment until January 20, 1975, although they had been notified earlier of the theft of other money orders in the same series stolen from the same Seven-Eleven store at the same time.

One hundred and twenty-seven American Express money orders bearing serial numbers CH715737233 through CH715737359 were stolen on July 10, 1968, in a burglary of a Seven-Eleven store in Colorado Springs, Colorado. Pursuant to the standard procedures of American Express, the F.B.I. was not immediately notified of the theft. Rather, a Transactions in Difficulty form with the serial numbers of the stolen money orders was initiated and disseminated to all American Express outlets and the American Express clearing bank to which all money orders are submitted for payment. The clearing bank was the Chase

Manhattan Bank in New York. It is the practice of American Express not to notify the F.B.I. about the theft of money orders until they are negotiated, presented to the clearing bank for payment, and payment refused upon the directions of American Express, after comparison of the serial numbers with the Transactions in Difficulty forms. The F.B.I. in Kansas City ordinarily would not be initially notified unless the money orders were negotiated in Kansas City.

On January 6, 1975, three days before the challenged search, the F.B.I. office in Kansas City was notified by letter dated December 30, 1974, that three of the money orders in the stolen series had been negotiated in Kansas City. None of these money orders, numbers CH715737347, CH715737349, and CH715737352 are the basis of any of the offenses charged in the indictment. On January 10, 1975, the F.B.I. in Kansas City opened case file number 87–29358 concerning these three money orders and Agent Sypult was assigned to the investigation.

The money orders which are the basis for each count in the indictment were negotiated in the Kansas City area in the last two weeks of December, 1974 and the first week of January, 1975. Payment of the money orders was refused by the American Express clearing bank on December 30 and 31, 1974, and January 3 and 10, 1975. The F.B.I. Kansas City office did not receive notification about the theft and negotiation of these money orders through ordinary channels until January 20, 1975.[2] Under standard procedures it was inevitable that the F.B.I. Kansas City office would have been notified of the theft and negotiation of these stolen money orders. In view of the fact that the F.B.I. Kansas City office was not notified about negotiation of the money orders which are the basis of the

offenses charged in the indictment until ten days after Agent Sypult obtained the illegally seized evidence which implicated defendant, there is no question but that the illegally seized evidence not only greatly accelerated, but also caused initiation of, the investigation of defendant in connection with the offenses. Nevertheless it was not received in evidence in the trial of this case on the issues of guilt or innocence.

Despite this fact, it is concluded that the F.B.I. had sufficient information in its possession independent of the illegally seized evidence which would inevitably have led to investigation and proof of guilt of defendant when the F.B.I. Kansas City office in usual course was notified of the negotiation of the stolen money orders which are described in the indictment in this case. Prior to January, 1975, money orders in the same series as those stolen in the 1968 burglary in Colorado Springs had been negotiated in various parts of the country. Agent Sypult testified that he was earlier aware that several individuals had been arrested and charged with possessing or negotiating those money orders, including Donald Eugene McGaughey, Raymond Dale Abraham, Edward Eugene Lawson, and Marvin Frederick Gabb, Jr.

On October 3, 1974, Agent Sypult interviewed defendant and McGaughey, defendant's companion at the time, who had been arrested by Kansas City, Kansas, police for possession of a stolen Missouri license plate. During the interview, Sypult asked defendant for identification and defendant produced a temporary Missouri operator's license in his own name. When asked for additional identification, a permanent Missouri operator's license in the name of Allen Mauk fell out of his wallet onto the hood of the automobile.

Following the interview, Sypult ran defendant and McGaughey through the F.B.I.

---

2. Agent Sypult testified that the F.B.I. in Kansas City received an urgent telegram from American Express on January 10, 1975, concerning two of the money orders in the indictment bearing serial numbers CH715737353 and CH715737354. However, it appears that that telegram was prompted by the Blue Springs police department's discovery of the stolen money order in the illegal search of defendant's automobile that day since it was initiated by the American Express employee to whom the Blue Springs police spoke. Therefore this prior notification must be considered as fruit of the illegal search.

index. He discovered that McGaughey had been involved in negotiating stolen money orders which he later determined to be in the same series as those in the indictment in this action. He further discovered that defendant was on federal probation for interstate transportation of stolen property, and that defendant had been arrested in Topeka, Kansas, for cashing bogus personal checks in the name Paul Albert Askew in September, 1974.

Although there was no substantial evidence linking defendant to McGaughey's involvement in negotiating stolen money orders, and no evidence that defendant had been involved with stolen money orders in any way, defendant inevitably would have been reasonably suspected of having committed the offenses for which he stands indicted in this action because of his association with McGaughey, his prior criminal record which included an arrest for cashing bogus personal checks, and his previous possession of a false piece of identification. Once the investigation was focused on defendant, his picture would inevitably have been included in the array displayed to the persons who accepted the money orders which produced further evidence of defendant's participation in the offense. It is not necessary to assume that the check protector and typewriter would have been discovered in defendant's possession had he been arrested sometime after January 20, 1975, because he kept them in his personal possession and would have had no reason to believe that he was under suspicion which would have resulted in his disposing of the instruments, because those instruments had been legally seized on January 9, 1975.

### B. Conclusions of Law.

■ The exclusionary rule announced in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), was later expanded by the Supreme Court to forbid not only use in court of evidence seized in an illegal search, but any use of such evidence whatsoever. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The prohibition against any use of illegally seized evidence was denominated the "fruit of the poisonous tree" doctrine by Justice Frankfurter in *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307, 312 (1939). *See generally*: Annotation " 'Fruit of the Poisonous Tree' Doctrine Excluding Evidence Derived From Information Gained in Illegal Search," 43 A.L.R.3d 385 (1972).

■ However, merely because evidence is shown to have been discovered by exploitation of evidence seized in an illegal search does not make such evidence ". . . sacred and inaccessible." *Silverthorne v. United States, supra,* 251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed. at 321. *See also: Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453–454 (1963); *Nardone v. United States, supra,* 308 U.S. at 341, 60 S.Ct. at 267–268, 84 L.Ed. at 311–312. Once an illegal search has come to light, the defendant has the burden of going forward with specific evidence to show that the evidence sought to be admitted was "tainted" by the illegal search. The ultimate burden of persuasion is then placed on the government to show in one of three ways that the evidence was obtained ". . . by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra,* 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. *Accord: Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Nardone v. United States, supra; United States v. Coplon,* 185 F.2d 629 (2nd Cir. 1950).

■ First, the government may prove that knowledge of the evidence was obtained from a source independent of the illegal search. *Nardone v. United States, supra; Silverthorne v. United States, supra; United States ex rel. Owens v. Twomey,* 508 F.2d 858 (7th Cir. 1974); *United States v. Falley,* 489 F.2d 33 (2nd Cir. 1973); *Peterson v. United States,* 411 F.2d 1074 (8th Cir. 1969).

Second, the government may prove that the causal connection between the illegally seized evidence and the evidence sought to be admitted is ". . . so attenuated as

to dissipate the taint." *Nardone v. United States, supra,* 308 U.S. at 341, 60 S.Ct. at 268, 84 L.Ed. at 312. *See also: Wong Sun v. United States, supra; United States ex rel. Owens v. Twomey, supra; United States v. Evans,* 454 F.2d 813 (8th Cir. 1972); *Leek v. Maryland,* 353 F.2d 526 (4th Cir. 1965).

Finally, the government may prove that the evidence inevitably would have been gained even without the unlawful search. *United States v. DeMarce,* 513 F.2d 755 (8th Cir. 1975); *United States ex rel. Owens v. Twomey, supra; Government of Virgin Islands v. Gereau,* 502 F.2d 914 (3rd Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *Gissendanner v. Wainwright,* 482 F.2d 1293 (5th Cir. 1973); *United States v. Seohnlein,* 423 F.2d 1051 (4th Cir. 1970), *cert. denied,* 399 U.S. 913, 90 S.Ct. 2215, 26 L.Ed.2d 570 (1970); *Killough v. United States,* 119 U.S.App.D.C. 10, 336 F.2d 929 (1964); *Wayne v. United States,* 115 U.S.App.D.C. 234, 318 F.2d 205 (1963), *cert. denied,* 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963).[3]

The degree of the government's burden has not been clearly established. The United States Court of Appeals for the Third Circuit has ruled that the government must carry its burden by "clear and convincing" evidence. *Government of Virgin Islands v. Gereau, supra; United States v. Archie,* 452 F.2d 897 (3rd Cir. 1971). The United States Court of Appeals for the Second Circuit applies the preponderance of the evidence test. *United States v. Falley, supra; United States v. Schipani,* 414 F.2d 1262 (2nd Cir. 1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970). Regardless of the degree of burden imposed, the government has met that burden in this case.

Defendant has shown by specific evidence that but for the illegal search of defendant's automobile on January 10, 1975, at John's Body Shop, some of the government's evidence (including the stolen money orders) and the connection with the other stolen money orders, would not have come to light *prior to January 20, 1975,* when the F.B.I. was first notified of negotiation of the stolen money orders. The burden is therefore on the government to prove that the evidence is admissible under one of the above three tests.

For the reasons stated hereinafter it is not necessary to determine if either the "independent source" or the "attenuated basis" tests are satisfied in this case. The government had no substantial independent basis for suspecting defendant of having committed the offenses charged in the indictment at the time of the illegal search since it had no notice of the offenses at that time. Furthermore, the illegally seized evidence was directly responsible for acceleration of the government's investigation prior to January 20, 1975, when the government received notice of the offenses from American Express. Thus, the connection between the illegally seized evidence and the other evidence in this case is not "attenuated."

 However, as factually concluded, there is clear and convincing evidence that the government had sufficient leads independent of the illegally seized evidence in its possession by January 20, 1975, which would inevitably have focused the investigation of the offenses charged in the indictment on defendant and would have resulted in securing evidence of defendant's guilt in this case. Defendant was known to have associated with a person who had negotiated money orders in the same series as those in the indictment; he had been arrested for negotiating bogus personal checks which was an offense similar in character to those for which he was indicted; and earlier he had been seen by an agent of the F.B.I. in possession of a false piece of identification. The mere fact that the illegally seized evidence was a cause of earlier discovery of

---

**3.** *Cf. United States v. Resnick,* 483 F.2d 354 (5th Cir. 1973); *United States v. Bacall,* 443 F.2d 1050 (9th Cir. 1971); *But see: United States v. Castellana,* 488 F.2d 65 modified 500 F.2d 325 (5th Cir. 1974); *Parker v. Estelle,* 498 F.2d 625 (5th Cir. 1974); *United States v. Schipani,* 414 F.2d 1262 (2nd Cir. 1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970).

the other evidence in this case in the sense that it accelerated, facilitated or expedited discovery of the other evidence prior to January 20, 1975, is immaterial. This is true because the evidence would inevitably have been discovered on the basis of independent lawful leads after January 20, 1975. *Compare: United States ex rel. Owens v. Twomey, supra; Gissendanner v. Wainwright, supra.* It is therefore concluded that the government has proven by clear and convincing evidence that none of the government's evidence admitted in this case is "fruit" of the illegal search.

### III. *Sufficiency of the Evidence.*

█ The final issue is whether the admissible evidence proves beyond a reasonable doubt that defendant committed the crimes charged in the indictment.[4] It is concluded that the evidence of defendant's guilt is overwhelming, and far beyond a reasonable doubt.

First, the evidence proves beyond a reasonable doubt that each of the thirteen money orders in the thirteen counts of the indictment[5] were negotiated by the same person. The payee on each of the money orders was either "Jack Montgomery" or "Jack B. Montgomery." In the expert opinion of Donald Stangel of the F.B.I. laboratory in Washington, D. C., the same check protector, Paymaster Check Protector Series 500 Serial Number RBRH10412 was employed to manufacture all thirteen of the money orders. It was also Stangel's expert opinion that the same typewriter, Brother Typewriter Serial Number F9448521, was used to prepare all of the money orders except that in Count XII which was prepared entirely in ink without any typed impressions. Finally, it was Stangel's expert opinion that the hand that signed the names

"Jack Montgomery" or "Jack B. Montgomery" on each of the money orders was the same.

Second, the evidence proved beyond a reasonable doubt that it was the defendant who forged and negotiated each of the money orders by filling in the amount of the money order, the sender, the payee and the endorsement. The Paymaster Check Protector 500 Serial Number RBRH10412 and Brother Typewriter Serial Number F9448521 used to fill in respectively all thirteen and twelve of the money orders were found in defendant's possession locked in the trunk of his automobile. Further, there was substantial testimony by persons who accepted and cashed several of the money orders that it was defendant who cashed those money orders.

It was stipulated that Helene Mintz, Assistant Manager of Lory's Fashions in Kansas City, Missouri, in an interview with Agent Robert L. Sypult of the F.B.I. on January 13, 1975, selected defendant from a photographic array as the individual who cashed the money orders in Counts II and III of the indictment on December 24, 1974.

It was further stipulated that Charles Mueller, Assistant Manager of a Western Auto Store in Raytown, Missouri, in an interview with Agent Sypult on January 16, 1975, selected from several photographs that of defendant as the one which looked "most like" the person who cashed the money order in Count VI of the indictment on December 18, 1974.

It does appear that Bradley Gorden, a sales clerk at the Western Auto Store in Independence, Missouri, gave a description of the individual who cashed the money order in Count I of the indictment which did not exactly fit defendant and was un-

---

4. None of the suppressed, evidence has been considered in determining the sufficiency of the evidence in this case.

5. The serial numbers of those money orders are in each count of the indictment:

| Count I | CH715737350 |
|---|---|
| Count II | CH715737353 |
| Count III | CH715737354 |
| Count IV | CH715737358 |
| Count V | CH715737302 |
| Count VI | CH715737351 |
| Count VII | CH715737307 |
| Count VIII | CH715737355 |
| Count IX | CH715737356 |
| Count X | CH715737301 |
| Count XI | CH715737303 |
| Count XII | CH715737308 |
| Count XIII | CH715737309 |

able to select the individual who cashed the check from a photographic array which included defendant. Gorden stated to Agent Sypult on January 20, 1975, that he could not specifically recall the individual who cashed the money order on December 18, 1974, but that he thought the individual was a white male, 5' 8" to 5' 11" tall, 190 pounds, 20–30 years of age, with black or dark brown hair. Defendant is a white male, approximately 6' 1" tall, approximately 50 years of age, with red hair. However, Gorden's inability to recall the individual who cashed the money order requires that Gorden's testimony on identification be given no weight. But the other evidence proves defendant's guilt beyond a reasonable doubt of the charges in Count I.

There is no direct evidence that defendant was the individual who completed the money orders which are the basis for Counts I, IV, V, and VII through XIII of the indictment. Nevertheless, the circumstantial evidence on these counts is overwhelming proof far beyond a reasonable doubt of defendant's guilt. Defendant had in his possession the check protector and typewriter used to complete these money orders. Furthermore, the evidence recited above which shows beyond a reasonable doubt that the money orders in all thirteen counts were completed and signed by the same person, considered in conjunction with the direct evidence that defendant negotiated the money orders in Counts II, III, and VI, is sufficient to show beyond a reasonable doubt that defendant committed the acts charged in Counts I, IV, V, and VII through XIII.

The evidence proving that defendant completed the money orders and negotiated them using the name of a fictitious person or the name of an actual person without that person's authority is sufficient to prove violation of Section 2314, Title 18, United States Code. *United States v. Williams,* 498 F.2d 547 (10th Cir. 1974); *United States v. Buckles,* 495 F.2d 1377 (8th Cir. 1974).

For the foregoing reasons, it is therefore

ORDERED that the motions by defendant and the government to reconsider the October 3, 1975, "Order Granting In Part and Denying In Part Defendant's 'Motion to Suppress Physical Evidence'" be, and they are hereby, denied. It is further

ORDERED that defendant's motion to suppress all of the government's evidence be, and it is hereby, denied. It is further

ADJUDGED that defendant be, and he is hereby, found guilty of the offenses charged in Counts I through XIII of the indictment.[6]

## APPENDIX

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S "MOTION TO SUPPRESS PHYSICAL EVIDENCE"

WILLIAM H. BECKER, Chief Judge.

Defendant was indicted on January 23, 1975, on thirteen counts of violating Sections 2 and 2314, Title 18, United States Code, by willfully, knowingly and with fraudulent intent transporting a series of falsely made securities in interstate commerce. On April 2, 1975, defendant moved to suppress all physical evidence seized from defendant's motel room and an automobile leased to him in a warrantless search carried out at the time of his arrest, and all evidence seized from his rented automobile in a warrantless search occurring on the day following his arrest. On July 7, 1975, an evidentiary hearing was held. The government did not oppose suppression of evidence seized from defendant's motel room, and therefore evidence relating to that search will not be considered herein. However, the government did oppose the motion to suppress evidence seized as a result of the two automobile searches which are considered herein.

### I. *Findings of Fact.*

On January 9, 1975, at approximately 11:00 p. m., Officer Ronald L. Brim assisted

---

**6.** A copy of the October 3, 1975 "Order Granting In Part and Denying In Part Defendant's

'Motion to Suppress Physical Evidence'" is attached as an appendix to this memorandum.

by Officer James Wilbanks of the Blue Springs, Missouri Police Department were directed to arrest defendant Theodore E. Kelly upon a warrant for defendant's arrest issued by the Lee's Summit, Missouri Police Department. The warrant charged defendant with failing to immediately, by the quickest means of communication, give notice of a motor vehicle accident occurring January 2, 1975, in Lee's Summit in violation of a Lee's Summit traffic ordinance (Plaintiff's Exhibit, hereinafter "PX", 106). Officer Brim did not know the defendant personally. In order to assist the officers in identifying and locating the defendant, Officer Brim was given a photograph of the defendant. Further, Brim was advised that the defendant was reported to be residing at Room 118 of the Quality Inn, 1110, North Highway 7, in Blue Springs, Missouri; that defendant was driving a described automobile bearing Missouri license number ET3–933; and that defendant was on parole release, and was the subject of pending felony charges from other cities.

Officers Brim and Wilbanks first went to the Quality Inn to inquire whether defendant was in his room. After the desk clerk told the officers that he didn't know if defendant was there, Officer Brim went to Room 118 without a key. Receiving no response, Officer Brim decided the defendant was not in Room 118 without entering the room.

Officers Brim and Wilbanks who were in separate police cars, one marked and one unmarked, then parked their cars across the street from the motel in a service station parking lot. Within a few minutes, the officers saw the defendant drive past in a car and park directly in front of Room 118 four or five steps from the entrance to Room 118. The defendant left the car and entered the room quickly before the officers could arrive at the door. The officers drove across the street to an area near the entrance to Room 118, left their cars, proceeded to the entrance of the room and knocked on the door. When the defendant opened the door, the officers identified themselves, asked the defendant if he was Theodore E. Kelly, and upon receiving an affirmative answer told defendant that they had a warrant for his arrest.

After informing defendant of the nature of the warrant, Officer Brim advised him that he was under arrest. Officer Wilbanks advised the defendant of his *Miranda* rights. At or about the same time, defendant was handcuffed by one of the officers and patted down for weapons. The keys to the automobile driven by defendant were found on his person in one of his pockets. Officer Brim then asked defendant whose car defendant was driving. Defendant's first response was that he didn't know. A few minutes later, defendant stated that the car belonged to his brother. To verify ownership of the car by radio, Officer Brim requested a check of ownership by running the license number through the computer. From the computer response, Officer Brim was advised that the Missouri license on the car was issued to "A.V.E. Enterprises", multiply owned.

Having received conflicting reports of ownership from the defendant and the official records by radio, Officer Brim asked defendant if he could show proof of ownership of the vehicle. The defendant failed to answer this inquiry. Officer Brim then went to the vehicle, initially to find evidence of the correct ownership of the vehicle. Immediately after entering the automobile, the officer opened the glove compartment and found the automobile registration and a loaded .22 Reuger-Barrett revolver. Officer Brim also saw in plain view in an open ash tray a single live round of .38 caliber ammunition. Finding nothing more in the glove compartment, the officer then checked the rear seat and, in order to make sure that there were no more weapons in the vehicle, Brim opened and searched the trunk. In the trunk, Brim inadvertently found a typewriter in a case, a check protector and other pieces of forged and uncompleted forms for identification including simulated driver's licenses in various names, credit cards, gate passes and I.

D. cards that were inside the typewriter case itself.

Under the customary procedure of the Blue Springs Police Department, when a person is apprehended on a charge of failing to report an accident, his automobile is towed for safekeeping if it is not on that person's property at the time of the arrest. In connection with the towing, it is also customary procedure to inventory the personal property in the automobile for the protection of the owner. Pursuant to this procedure, after the initial search for weapons, Officer Brim inventoried the personal property belonging to defendant found in the car. The items found were listed on a "tow report."

Officer Brim then seized the revolver, the check protector and the numerous identification cards found in the search for a weapon. Not suspecting at that time that the typewriter might have been used in criminal activity, Officer Brim placed the typewriter in the case, and some personal effects of the defendant found in the trunk, in Room 118 on a bed. The room was locked, and the defendant was taken to police headquarters where he was booked, fingerprinted, photographed and arrested for illegal possession of a firearm. At that time, defendant voluntarily stated without any questioning that, as recollected by Officer Brim, "the other agencies, or the other persons that he had previously been arrested by, had nothing on him, that we had the cream of the crop."

On the following morning, January 10, 1975, Officer Brim reported to his relief, Sergeant M. C. Little, about defendant's arrest and the seizure of property and requested that the typewriter left in the room be secured and brought to police headquarters. By that time, Officer Brim realized that the typewriter could have been used to prepare false documents used criminally. Sgt. Little, accompanied by Detective Gary Ahern of the Blue Springs Police Department, retrieved the typewriter from the motel room later that morning.

The same day, Detective Ahern conducted a warrantless search of the automobile driven by defendant at John's Body Shop in Blue Springs to where the automobile had been towed. Before making the search, Detective Ahern spoke by telephone with the manager of A.V.E. Enterprises, the owner of the car. The manager advised him that the car had been overdue since December 2, 1974; that a large bill was outstanding; and that she wanted to take back possession of the car. The manager also gave her consent to a search of the car. Detective Ahern then carried out a search of the car and discovered numerous false identification cards and an American Express money order in the glove compartment. Those items were seized and taken to police headquarters.

## II. *Conclusions of Law.*

▇▇▇▇ Both searches of the automobile defendant had been driving were conducted without a search warrant. The basic constitutional rule under the Fourth Amendment is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2031–2032, 29 L.Ed.2d 564, 576 (1971). The burden is on the party seeking to uphold a warrantless search to show that the search falls within one of the limited exceptions to the warrant requirement. *Coolidge v. New Hampshire, supra.*

### A. *First Automobile Search.*

The government seeks to uphold the initial search of the automobile at the time of defendant's arrest on three theories: (1) the search was incident to a lawful arrest; (2) the evidence seized was in "plain view"; and (3) the search falls within the "automobile" exception to the warrant requirement. Because the search was justified under the

latter two theories, no consideration of the first theory is necessary.[1]

■ It has long been recognized that a less stringent warrant requirement applies to searches of automobiles than to other searches. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The constitutional difference between searches of vehicles and houses and similar structures "stems both from the ambulatory character of [vehicles] and from the fact that extensive, and often noncriminal contact with automobiles will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." *Cady v. Dombrowski,* 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973).

The case most closely resembling the case at bar is *Cady v. Dombrowski, supra.* In that case, an automobile driven by an off-duty police officer had been involved in an accident and towed to a private garage. Believing that off-duty police officers were required to carry their service revolvers, police made a limited search of the vehicle for purposes of recovering the weapon to keep it from falling into the hands of vandals while the automobile was at the garage. Incriminating evidence was discovered in the trunk of the car. The United States Supreme Court upheld the search:

"... the type of caretaking 'search' conducted here of a vehicle that was neither in the custody nor on the premises of its owner, and that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained. ... Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the

meaning of the Fourth and Fourteenth Amendments." (413 U.S. at 447–448, 93 S.Ct. at 2531, 37 L.Ed.2d at 718).

In the case at bar, the initial intrusion into the automobile defendant had been driving was justified by a reasonable belief that the car might be stolen based on the conflict between defendant's statement of ownership and the computer report of ownership from the official records. *United States v. Sifuentes,* 504 F.2d 845 (4th Cir. 1974). Alternatively, the initial intrusion was justifiable as a measure taken preparatory to the protective impoundment of the car. *Cady v. Dombrowski, supra; Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■ Once the officer was lawfully inside the vehicle to search for evidence of ownership, he discovered in plain view a loaded .22 revolver in the glove compartment and a live round of .38 ammunition in an open ash tray. The discovery of one loaded weapon and a live round of ammunition fitting another model revolver supports a reasonable belief that another weapon might be found in the vehicle. The officer knew that the automobile was about to be towed to a private garage pursuant to customary police procedure, and could reasonably have searched the car to recover the weapon he suspected was concealed therein to prevent its falling in the hands of vandals while at the garage. Once the trunk was lawfully opened in the search for a weapon, the evidence sought to be suppressed here was in "plain view" and thus was subject to seizure: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States, supra; Coolidge v. New Hampshire, supra.* Therefore, the initial search of the automobile was reasonable under the Fourth Amendment, and de-

---

1. The defendant was inside his motel room at the time of his arrest. The automobile with its trunk locked was several steps outside the door of the motel room. It is highly doubtful that the locked trunk of the automobile was suffi-

ciently within the immediate control of defendant at the time of his arrest to justify the search as incident to the arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

fendant's motion to suppress evidence seized as a result of that search will be denied.[2]

### B. Second Automobile Search.

The second warrantless search of the automobile defendant had been driving took place the day following defendant's arrest while the defendant was in custody and the automobile was locked in a private garage. The car had been towed to the garage for the owner's protection, and was not impounded pending forfeiture proceedings or being held as evidence. The government contends that the search was justified on the basis of the consent to search given by the manager of the automobile's owner, A.V.E. Enterprises.

█ The search cannot be justified on the basis of consent. Defendant did not give his consent to the search. Therefore, the question is whether the consent of the manager of A.V.E. Enterprises could validate the search. It is undisputed that the automobile was overdue under the terms of the lease agreement and a large bill was outstanding. However, the automobile had not been repossessed by the rental agency at the time of defendant's arrest, and therefore defendant had a reasonable expectation of privacy with respect to the interior of the automobile which entitles defendant to the protection of the Fourth Amendment. The fact that the rental agency may have had a legal right to repossess the automobile does not strip defendant of Fourth Amendment protection, in light of the Supreme Court's position that

"... it is unnecessary and ill advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical."

*Jones v. United States,* 362 U.S. 257, 266, 80 S.Ct. 725, 733, 4 L.Ed.2d 697, 705 (1960); *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Defendant had both a valid possessory interest and a reasonable expectation of privacy in the automobile which gives him standing to object to the search and which cannot be vitiated by the consent to the search by the rental agency.

█ The search cannot be justified under any other exception to the warrant requirement. The car was locked inside a private garage and the defendant was in custody at the time of the arrest. There was ample opportunity to procure prior judicial approval. The search is therefore not justifiable under the "automobile exception" because the exigent circumstances justifying warrantless searches under that exception were not present. *Coolidge v. New Hampshire, supra.* The opportunity to search was hardly "fleeting." *Compare: Chambers v. Maroney, supra.* The automobile was not being held in police custody as evidence pending forfeiture proceedings. *Compare: Cooper v. California, supra.* The search was not incident to defendant's arrest. *Chimel v. California, supra; Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Therefore, defendant's motion to suppress all evidence seized in the second search of the automobile by Detective Ahern on January 10, 1975, will be granted.

For the foregoing reasons, it is therefore

ORDERED that defendant's "Motion To Suppress Physical Evidence" be, and it is

---

2. The evidence indicates that Officer Brim made an inventory of the personal property in the automobile in preparation for the towing of the car to a garage. If the incriminating evidence had been discovered solely as a result of the inventory pursuant to police department regulations, it would be clearly inadmissible under *United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973). However, as noted in the "Findings of Fact," the initial search was undertaken to recover a weapon and not for inventory purposes. The inventory took place subsequent to the search for weapons.

hereby, granted with respect to all evidence seized from Room 118, Quality Inn Motel, Blue Springs, Missouri, on January 9, 1975, with the exception of a Brother Portable Typewriter, Serial No. F9448521, and with respect to all evidence seized from defendant's automobile in the second search on January 10, 1975, at John's Body Shop, Blue Springs, Missouri. It is further

ORDERED that defendant's "Motion To Suppress Physical Evidence" be, and it is hereby, denied with respect to all evidence seized from defendant's automobile in the initial search conducted at the time of defendant's arrest on January 9, 1975, at the Quality Inn Motel, Blue Springs, Missouri.