UNITED STATES of America, Appellee,

v.

Theodore Eugene KELLY, Appellant.

No. 76–1550.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1976.

Decided Jan. 4, 1977.

Rehearing Denied March 7, 1977.

Thomas M. Bradshaw, Asst. Federal Public Defender, Western District of Missouri, Kansas City, Mo., argued and on brief, for appellant.

Kenneth Josephson, Asst. U. S. Atty. (argued), Bert C. Hurn, U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before GIBSON, Chief Judge, and HEANEY and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Theodore Eugene Kelly appeals from his conviction for causing American Express Company money orders to be transported in interstate commerce in violation of 18 U.S.C. § 2 and § 2314. He argues that the trial court erred in admitting evidence obtained from the first, of two, warrantless search of a rental car in his possession as well as in the admission of evidence derivatively obtained from the second warrantless car search.[1] For the reasons set forth below, we reverse.

The challenged searches and seizures arose out of the arrest of Kelly in his motel room for failure to give prompt notice to the police of a car accident in which he had been involved seven days earlier. The other driver involved in the accident had filed a report which included information given her by Kelly as to the make of the car, its license number, his residence and telephone number. The accident report correctly listed A. V. E. Enterprises, a car rental agency as the owner of the car. Because the police had been unable to reach Kelly by phone to obtain additional information about the accident, a warrant for his arrest was issued.

While the arresting officers were aware that he was on parole and had pending criminal charges for passing bad checks, they were unaware that another officer in their department was investigating Kelly's reasons for being in town.

The arrest warrant was executed shortly after Kelly had returned to his motel room and parked the car out front. He let the officers in the motel room after they had identified themselves and informed him that they had a warrant for his arrest. The officers then advised him of his rights, placed him under arrest, handcuffed him and asked him who owned the car. After receiving an evasive answer, the officers checked the car license number through the police computer and found that the car was registered to A. V. E. Enterprises, the car rental agency listed as the owner on the accident report. The computer check also revealed that the car had not been reported as stolen.

Nonetheless, after obtaining the car keys in a pat down search, one of the officers unlocked the car and checked the glove compartment for car ownership papers. After the officer found a .22 revolver in the glove compartment and a live round of .38 ammunition in the ashtray, he searched the trunk. There, he found a typewriter and a check protector. When the typewriter case was opened, an envelope containing several pieces of identification was found. The motel room was also searched.[2] The typewriter was initially taken to the motel room but it was retrieved from the motel room the following day when it too became suspected of being used in criminal activity. The car was towed to John's Body Shop. A second more intensive search of the car was conducted the following day after permission was received from the car rental agency from which the car was overdue. They found a blank American Express Company money order in the CH 715 737 series and

---

1. We find no merit in the appellant's claim that he was denied a speedy trial in violation of the Sixth Amendment.

2. The defense motion to suppress evidence seized in the motel room was not opposed by the government and was granted by the trial court.

several pieces of identification in the names of Jack B. and Carolyn Montgomery, one of which had a picture of Kelly attached to it. This was the first evidence to link Kelly with the offenses for which he was eventually charged and convicted.

## I.

The trial court held that the first warrantless search of the car was reasonable under the Fourth Amendment and denied the defense motion to suppress all the evidence found in the course of the search. We disagree. While the Constitution forbids only unreasonable searches and seizures, *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), when a search is conducted without a warrant, it is incumbent upon the government to prove that the search falls within one of the limited exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■■■ The critical question is whether the initial intrusion was lawful.[3] The government seeks to justify the search on the ground that Kelly's evasive answers as to who owned the car gave rise to a "reasonable and legitimate suspicion" that the car had been stolen. On the face of this record, we question the legitimacy of the belief.[4] The computer check of the car license number, conducted prior to the initial search, revealed that the car was registered to the same car rental agency listed on the accident report and that the car had not been reported as stolen.

Even if probable cause did exist, that alone is not enough to justify a warrantless car search.

In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient justification for a search.

*Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *Coolidge v. New Hampshire, supra* 403 U.S. at 461–462, 91 S.Ct. 2022; Note, *Warrantless Searches and Seizures of Automobiles*, 87 Harv.L.Rev. 835 (1974). No exigent circumstances were present here. Kelly was arrested inside his motel room and immediately placed in handcuffs. The car was unoccupied and parked on private property.[5] There was no showing that a friend or confederate existed to whom the location of the car could be reported and who would be able to remove the car. Absent exigent circumstances, a warrant is

---

**3.** The search cannot be justified as a search incident to a valid arrest. The car parked outside the motel room where the arrest occurred is clearly not the area "within his immediate control," which may be searched under *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

**4.** Under other circumstances, ambiguous responses as to a car's ownership have been held to constitute probable cause. *United States v. Brown*, 535 F.2d 424, 428 (8th Cir. 1976); *United States v. Sifuentes*, 504 F.2d 845, 847 (4th Cir. 1974).

**5.** The fact that the car was parked outside his motel room is hardly distinguishable from the facts of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In

that case, the Supreme Court held invalid the search of the defendant's car which had been parked in the driveway of his home. The Court stated:

[I]t seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose. *Coolidge v. New Hampshire, supra* at 463, n. 20, 91 S.Ct. at 2036.

We do not find *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), which upheld a less intrusive search of a car exterior after the car had been seized from a public parking lot, to be to the contrary.

required. Thus, we reverse the trial court and hold that the evidence found in the first warrantless car search should be suppressed.

## II.

■ The trial court twice[6] found the second warrantless search of Kelly's car to have been conducted in violation of the Fourth Amendment. While the items found in that search were suppressed, the defense motion to suppress all the derivative evidence[7] under the "fruit of the poisonous tree doctrine" was denied.

It is well established that direct evidence obtained in an illegal search is subject to the exclusionary rule first recognized in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Derivative evidence is admissible (1) where the government learns of it from a source independent of and distinct from the illegal activity, *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *United States v. DeMarce*, 513 F.2d 755, 758 (8th Cir. 1975); or (2) where its connection to the illegality has "become so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); *Wong Sun v. United States*, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Evans*, 454 F.2d 813, 817 (8th Cir. 1972).

The trial court found that the government failed to prove either that there was an independent source for the evidence or that the connection between the illegally seized evidence and the other evidence in the case was attenuated. It was not until the seizure of the blank American Express Company money order and the pieces of identification bearing the name Montgomery that there was any evidence linking Kelly to the crimes for which he was eventually convicted. There had been no prior investigation with respect to the passage of the money orders, indeed the FBI had not yet received notice from the American Express Company of their refusal to pay the stolen money orders. Thus, the trial court should have ordered that all the government's evidence be suppressed as the "fruit of the poisonous tree" because neither of the two long recognized exceptions to the exclusionary rule were applicable.

The trial court, however, followed the Seventh Circuit,[8] and recognized a third exception to the exclusionary rule which would admit derivative evidence if it inevitably would have been gained without the illegal search. It found that there was "clear and convincing evidence that the government had sufficient leads independent of the illegally seized evidence * * * which would inevitably have focused the investigation of the offenses charged in the indictment * * * and would have resulted in securing evidence of defendant's guilt in this case."

The Seventh Circuit derived the inevitable discovery limitation to the exclusionary rule from the following language of *Wong Sun v. United States, supra*:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality

---

**6.** *See* Order Granting in Part and Denying in Part Defendant's "Motion to Suppress Physical Evidence," filed October 3, 1975; Final Judgment of Conviction on All Counts, Order Denying Motions by Defendant and Government to Reconsider October 3, 1975, "Order Granting in Part Defendant's 'Motion to Suppress Physical Evidence,'" and Order Denying Defendant's Motion to Suppress All of the Government's Evidence, filed June 16, 1976. No appeal has

been taken from these decisions of the trial court.

**7.** This includes the identification evidence obtained through the use of a photograph of Kelly in a photo array displayed to individuals who accepted the money orders.

**8.** *United States ex rel. Owens v. Twomey*, 508 F.2d 858, 865–866 (7th Cir. 1974).

or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

*Id.* 371 U.S. at 487–488, 83 S.Ct. at 417. Quoted by *United States ex rel. Owens v. Twomey,* 508 F.2d 858, 865 (7th Cir. 1974). We need not decide now whether to follow the Seventh Circuit [9] and recognize the inevitable discovery limitation to the exclusionary rule. We leave open the question of whether *Wong Sun* establishes a third exception to the exclusionary rule because the government clearly failed to establish that the evidence would have inevitably been gained without the illegal search.[10]

Accordingly, we reverse and remand the case to the trial court with directions that the convictions be set aside and a new trial granted at which the illegally seized and tainted evidence [11] shall be excluded.

---

9. The Fifth Circuit has rejected the inevitable discovery exception to the exclusionary rule because:

> [t]o admit unlawfully obtained evidence on the strength of some judge's speculation that it would have been discovered legally anyway would be to cripple the exclusionary rule as a deterrent to improper police conduct. *United States v. Castellana,* 488 F.2d 65, 68 (5th Cir.), *rev'd on other grounds,* 500 F.2d 325 (5th Cir. 1974) (en banc). *United States v. Houltin,* 525 F.2d 943 (5th Cir. 1976); *Parker v. Estelle,* 498 F.2d 625, 629–630, n. 12 (5th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). *See also* Pitler, *"The Fruit of the Poisonous Tree" Revisited and Shepardized,* 56 Calif.L.Rev. 579 (1968).

10. Without the illegally seized evidence, the information available to the government was that (1) Kelly was known to have associated with an individual who had negotiated money orders in the same series as those referred to in the indictment, (2) he had been arrested for the similar offense of negotiating bogus personal checks, and (3) he had been seen earlier by an FBI agent with a false piece of identification.

11. Since we have held that the check protector and the typewriter were illegally seized, the evidence that the check protector was used in preparing all the money orders and that the typewriter was used in preparing all but one of the money orders must also be suppressed.