[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 96-3240
_____

D.C. Docket No. 96-29-CR-J-20

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWAYNE BERMAN COOPER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 26, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

HATCHETT, Chief Judge:

The primary issue in this case is whether appellant-driver legitimately expected Fourth Amendment-level privacy in an overdue rental car that the rental company had not repossessed at the time of law enforcement's warrantless search. We (1) affirm the district court's conclusion that a law enforcement officer permissibly stopped appellant; (2) resolve the issue of first impression in appellant's favor, reversing the district court's conclusion that he lacked standing to challenge the search; and (3) remand for proceedings consistent with this opinion.

## I. BACKGROUND

On January 6, 1996, appellant, Dwayne Cooper, rented a car from Budget Rent-A-Car (Budget) in West Palm Beach, Florida. The contract specified January 20 as the return due date and West Palm Beach as the return location.[1] The contract also included the following terms and conditions:

> **14) VEHICLE RETURN: Renter is responsible for returning the Vehicle in the same condition as when received, to the location and on the date specified,** or sooner if requested by Budget. **FAILURE TO RETURN THE VEHICLE TO THE SPECIFIED LOCATION ON THE DUE DATE MAY RESULT IN A DROP CHARGE AND/OR RATE CHANGE.**
>
> **15) REPOSSESSION OF VEHICLE: The Vehicle may be repossessed,** without notice and at Renter's expense, if it is not returned when due, is illegally parked, is used in violation of law or of this Agreement, appears abandoned, or if Renter provides false or misleading information at time of rental.
>
> **16) FAILURE TO RETURN VEHICLE:** If the Vehicle is not returned when due or within 24 hours after written or oral demand by Budget,

---

[1] All dates correspond with 1996 unless otherwise stated.

> **Renter will be in unlawful possession of the Vehicle, and Budget may seek the issuance of a warrant for the arrest of anyone in possession of the Vehicle (including Renter).** Written demand is considered delivered 48 hours after Budget mails a certified letter to Renter at the home or business address Renter provides at time of rental.

Government's Ex. Three (capital letters and bold print in original). Aside from its warning about late fees in paragraph fifteen, the contract does not address the renter's ability to extend the due date. Budget's established policy, however, is that it will extend the due date if the renter makes a request over the telephone and sufficient funds exist on his or her credit card. Through his past course of dealings with Budget, Cooper knew of this unwritten policy. It had also been Cooper's experience that returning a rental car after the due date was "no problem" with Budget as long he had "room" on his credit card for the extra days and applicable fees.

On January 24, four days after the rental contract expired, Michael King of the Florida Highway Patrol (FHP) saw the rental car on Interstate 95 in Jacksonville, Florida. King, traveling in the center northbound lane of Interstate 95 in a marked car, noticed Cooper in his rear-view mirror unsuccessfully attempting to merge from the left to the center lane to continue on Interstate 95 after the highway "splits."[2] Finding himself on Interstate 10 rather than Interstate 95, Cooper accelerated past King, cut across King's lane, drove over an apex and exited the highway. Cooper's car came too close to King's vehicle during the lane change, causing King to apply his brakes in order to avoid an

---

[2] Irving Higgs accompanied Cooper as a passenger.

3

accident. Intending to issue Cooper a citation for an improper lane change, King signaled for Cooper to pull over into the exit's emergency lane.[3]

Complying with King's requests, Cooper identified himself, stepped out of the car and proffered his driver's license and the rental contract. King inquired about the rental car being four days overdue, and Cooper explained that he had extended the due date. Using his car telephone, King directed the FHP dispatcher to contact Budget and verify this information. Budget informed the dispatcher that Cooper had not requested an extension past January 20 and asked that the car be towed and returned. Budget had not reported the car stolen, sought a warrant for Cooper's arrest or otherwise notified Cooper that it intended to repossess the car. The dispatcher relayed this information to King, and he asked the dispatcher to contact a private towing service.

Soon thereafter, a second FHP trooper, Michael Smith, arrived to assist King. The troopers informed Cooper about Budget's plan to tow the car. Cooper requested to speak with a Budget representative, but the troopers would not permit him to use the telephone. Instead, King asked Cooper for consent to search the car. The parties dispute, and the

---

[3] Florida law prohibits an improper lane change:

> No vehicle shall be driven from a direct course in any lane on any highway until the driver has determined that the vehicle is not being approached or passed by any other vehicle in the lane or on the side to which the driver desires to move and that the move can be completely made with safety and without interfering with the safe operation of any vehicle approaching from the same direction.

Fla. Stat. § 316.085(2) (1995).

4

district court did not resolve, whether Cooper consented.[4]  In any event, King reached in through the passenger door, turned off the ignition, "swept" under the car seats and opened the glove compartment.  Although he did not find anything under the seats, King found a loaded firearm in the glove compartment and arrested Cooper for concealing a firearm.

While Cooper remained in custody inside the patrol car, King and Smith decided to proceed with a full inventory search of the rental car, a procedure which FHP policy required.  King opened the trunk and noticed garbage bags covering two square boxes. Also, on the floor of the trunk, King saw several plastic sandwich bags.  Before the inventory proceeded any further, however, it started to rain.  King told the dispatcher to cancel the towing service so that he and Smith would not have to search the car in the rain.

With assistance from another trooper, King and Smith drove the rental car to a covered overpass near the FHP station.  Resuming the search, they discovered that the boxes in the trunk were actually safes, in which Cooper denied having any ownership stake.  After Smith's K-9 unit detected narcotics upon sniffing the exterior of the safes, Smith pried them open with a crowbar and found cocaine, cocaine base, scales and other drug paraphernalia.  Eventually, after a "thorough search," the car was towed and

---

[4]  Consent is one of many factual issues that the district court did not resolve.  Our recitation of the facts derives from the few findings of fact that the district court actually rendered and undisputed portions of the record.

5

returned to Budget.  Budget charged Cooper's credit card for use of the car through January 25.

On February 28, a federal grand jury returned a three-count indictment against Cooper, charging him with:  (1) conspiracy to distribute cocaine base and possess cocaine with intent to manufacture cocaine base, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) possession of cocaine with intent to manufacture cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[5]  Cooper moved to suppress the evidence found inside the rental car, contending that King stopped him without probable cause and that the FHP's warrantless search violated his Fourth Amendment rights.  After an evidentiary hearing, the district court denied Cooper's motion and adopted the magistrate judge's recommended conclusions that: (1) the stop was permissible; and (2) Cooper lacked standing to challenge the search because "[a]fter the rental agreement expired and he failed to seek its extension, [Cooper] did not have a legitimate expectation of privacy in the rental car."[6]  The jury convicted Cooper on all three counts, and the district court sentenced him to life in prison.[7]

---

[5]  The indictment also charged Higgs, the passenger, with these same counts, but the district court granted the government's motion to dismiss him from the case.

[6]  The district court partially granted Cooper's motion to suppress with respect to all statements that Cooper made after his invocation of the right to remain silent.  This portion of the order, however, is not at issue.

[7]  Because of Cooper's two prior felony drug convictions, the federal "three-strikes" law mandated the life imprisonment sentence.  See 21 U.S.C. § 841(b)(1)(A).

## II.  ISSUES

Cooper raises two issues on appeal: (1) whether the district court clearly erred in finding that the FHP conducted a permissible traffic stop; and (2) whether the district court erred in concluding that he lacked standing to challenge the search of the rental car and the items therein.

## III.  CONTENTIONS

As to the first issue, Cooper contends that King's testimony that he stopped Cooper for an improper lane change was not credible.  Cooper insists that he did not violate any traffic laws and that King stopped him only to investigate for drugs.  The government points to the record, arguing that sufficient evidence supports the district court's finding and credibility assessment.

As to the second issue, Cooper argues that he subjectively and objectively expected privacy in the rental car, regardless of his failure to extend the due date.  In support of his subjective expectation, Cooper points to his prior course of dealings with Budget and its leniency regarding overdue rental cars.  Cooper further contends that society is willing to accept his expectation as reasonable because Budget had not acted upon its contractual right to repossess the vehicle at the time of the FHP's warrantless search.  The government, conversely, maintains that the rental car's overdue status renders unreasonable any expectation of privacy on Cooper's part.  The government further contends that Budget exercised its right to repossess through the FHP and,

7

therefore, Cooper was neither an authorized driver nor in possession of the rental car at the time of the inventory search.

## IV. DISCUSSION

We review the district court's findings of fact, including the permissibility of a stop, for clear error. See United States v. Smith, 39 F.3d 1143, 1144 (11th Cir. 1994). We review the district court's application of law to facts, including the legitimacy of a driver's expectation of privacy, de novo. See United States v. Thompson, 928 F.2d 1060, 1063 (11th Cir.), cert. denied, 502 U.S. 897 (1991).

### A. The Stop

As the district court correctly stated, law enforcement "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (internal quotation marks, citations and ellipses omitted). In Florida, a driver may change lanes only "with safety and without interfering with the safe operation of any vehicle approaching from the same direction." Fla. Stat. § 316.085(2) (1995). Upon due consideration of the record, we conclude that the district court did not clearly err in finding that King had probable cause to believe that Cooper violated section 316.085(2). King testified that Cooper merged into his lane without a safe amount of distance between their cars, causing King to apply his brakes to avoid an accident. The district court found this testimony more credible than Cooper's testimony that King intentionally accelerated to prevent him from exiting

8

the highway.  We find no basis to second-guess the district court's credibility assessment.

See Thompson, 928 F.2d at 1063.  Accordingly, we affirm the district court's conclusion

that the stop was permissible and not pretextual.

## B.  Standing

The Fourth Amendment prohibits law enforcement from conducting "unreasonable

searches and seizures."  U.S. Const. amend. IV.  To have standing to challenge a search,

one must manifest a subjective expectation of privacy in the invaded area that "society is

prepared to recognize as reasonable."  Rakas v. Illinois, 439 U.S. 128, 143 & n.12 (1978).

"[T]he individual's expectation, viewed objectively, [must be] justifiable under the

circumstances."  Smith v. Maryland, 442 U.S. 735, 740-41 (1979).  The individual

challenging the search bears the burdens of proof and persuasion.  See United States v.

Eyster, 948 F.2d 1196, 1209 (11th Cir. 1991).

The government does not seriously dispute Cooper's subjective expectation of

privacy in the rental car, even after the rental contract expired.  Cooper testified that,

based on his prior course of dealings with Budget, returning a rental car after the due date

is "no problem" as long as he has ample funds on his credit card to pay for it.  Cooper's

awareness that Budget could exercise its contractual right to repossess the rental car

anytime after the due date does not alter the sincerity of his belief that he retained privacy

in the car as long as he possessed and payed for it.  Nor does his acknowledgment that he

should have contacted Budget to extend the due date.  Consequently, we move to the

second part of the analysis, the objective reasonableness of Cooper's expectation of privacy.

Although fact-specific, case law has established some general boundaries as to what society will accept as reasonable regarding privacy in a motor vehicle. A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it. See e.g., Rakas, 439 U.S. at 130, 140, 148-49; United States v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995). On the other hand, a driver using a vehicle with the permission of an absent owner has been found to possess a reasonable expectation of privacy therein. See United States v. Garcia, 897 F.2d 1413, 1416-18 (7th Cir. 1990).[8] At least one court has extended this privacy right to a driver who had the absent renter's permission. See United States v. Kye Soo Lee, 898 F.2d 1034, 1038 (5th Cir. 1990).[9]

The legitimacy of a driver's expectation of privacy in an overdue rental car, however, is apparently an issue of first impression in this and other circuits. Nevertheless, we find several indications that under the circumstances of this case, Cooper's expectation of privacy is a reasonable one. First, a prior panel of this court has

---

[8] Accord United States v. Hargrove, 647 F.2d 411, 413 (4th Cir. 1981) (driver lacks a reasonable expectation of privacy in a vehicle that he or she stole).

[9] The Kye Soo Lee court also recognized the passenger's privacy right. 898 F.2d at 1038. In doing so, the Fifth Circuit did not discuss whether the rental company approved of this arrangement. See 898 F.2d at 1035-38. The Fifth Circuit later distinguished Kye Soo Lee and denied standing to a driver using a rental car with only the passenger's permission and not that of the renter or rental company. See United States v. Riazco, 91 F.3d 752, 753-55 (5th Cir.), cert. denied, 117 S. Ct. 497 (1996).

indicated in <u>dicta</u> a willingness to legitimize such an expectation of privacy.  In <u>United States v. Miller</u>, 821 F.2d 546, 548 (11th Cir. 1987), the court held that a driver possessed a legitimate expectation of privacy in a borrowed car.  The <u>Miller</u> court stated that the "nearly identical" case of <u>United States v. Smith</u>, 799 F.2d 704 (11th Cir. 1986), "supported" its holding.  821 F.2d at 546, 548-49.  The <u>Miller</u> court explained that, in <u>Smith</u>, "there [was] no suggestion that the defendant lacked the requisite standing to challenge the search," even though he "was driving a rented car and could only produce a rental contract that had expired <u>three weeks earlier</u>."  821 F.2d at 548-49 (emphasis added).[10]

In addition to recognizing this <u>dicta</u> in <u>Miller</u>, we note that <u>Smith</u> originated in the very same federal district as this case.  Contrary to its present dispute regarding Cooper's privacy rights in a four-day overdue rental car, the United States Attorney's Office apparently did not contest the <u>Smith</u> driver's privacy right in a three-week overdue rental car.  <u>See</u> 799 F.2d at 706 n.1.  Perhaps that arm of the government, at least at one time, was willing to accept the reasonableness of a driver's expectation of privacy in an overdue rental car under similar circumstances.  The same could arguably be said of the FHP, in that King initially asked Cooper for permission to search the car, even though King knew that the rental contract had expired.

---

   [10]  In <u>Smith</u>, the court held that law enforcement officers' stop of the rental car based on the defendants fitting a drug courier profile was unreasonable under the Fourth Amendment.  799 F.2d at 712.  We stress that our reference to the facts of <u>Smith</u> and the attendant <u>dicta</u> in <u>Miller</u> are merely for indicia purposes, <u>i.e.</u>, we do not hold that a driver possesses a reasonable expectation of privacy in a rental car that is three-weeks overdue.

11

We find additional indicia of reasonableness from a district court opinion, <u>United States v. Kelly</u>, 414 F. Supp. 1131 (W.D. Mo. 1976), <u>rev'd on other grounds</u>, 547 F.2d 82 (8th Cir. 1977). In that case, Kelly rented a car and promised to return it to the rental company no later than December 2. 414 F. Supp. at 1144. More than one month after the rental contract had expired, law enforcement officers arrested Kelly in a motel room on an unrelated matter. 414 F. Supp. at 1143. During the arrest, law enforcement officers seized car keys found on Kelly's person and conducted an initial search of the overdue rental car. 414 F. Supp. at 1143; 547 F.2d at 84. Pursuant to its policy, the law enforcement officers directed a private company to tow the car. 414 F. Supp. at 1144. The next day, the law enforcement officers asked the rental company for consent to search its car. Consenting to the search, the rental company stated that it wanted to repossess the car because Kelly's lease was overdue and he had a large outstanding bill. 414 F. Supp. at 1144. During the second warrantless search, the law enforcement officers found incriminating evidence in the glove compartment, which led to the discovery of other incriminating evidence. 547 F.2d at 85; 414 F. Supp. at 1131.

Kelly moved to suppress the evidence seized from the glove compartment and all derivative evidence. <u>Kelly</u>, 547 F.2d at 85. The district court granted the motion to suppress as to the items found in the glove compartment, but denied it as to the derivative evidence. 414 F. Supp. 1146; 547 F.2d at 85. The district court held that "the automobile had not been repossessed by the rental agency at the time of [Kelly's] arrest, and therefore [Kelly] had a reasonable expectation of privacy with respect to [its] interior." 414 F.

12

Supp. at 1146.  The district court then reached the merits of Kelly's challenge and found no applicable exceptions to the warrant requirement to justify the search.  414 F. Supp. at 1146.[11]

Cooper's expectation of privacy was vastly more reasonable than Kelly's.[12]  First, Cooper's rental contract expired four days prior to the search; Kelly's rental contract expired more than one month prior to the search.  Second, at the time of their initial contact with law enforcement officers, Cooper was in actual possession of the rental car, while Kelly was merely in constructive possession.  Third, Cooper paid Budget in full; Kelly had a large unpaid bill.  Finally, neither rental company took any affirmative steps to repossess the car prior to law enforcement officers' inquiries.

Thus, we have dicta from a prior panel of this court, past inaction from the government, the FHP's inquiry of Cooper and a district court opinion indicating the reasonableness of Cooper's expectation of privacy.  None of the cases upon which the government relies militate against such a finding.  First, we find no support for the

---

[11]  The district court rejected as irrelevant the rental company's consent to search the car, in light of its conclusion that the defendant retained privacy rights in it.  See Kelly, 414 F. Supp. at 1146 (the defendant's legitimate expectation of privacy "cannot be vitiated by the consent to the search by the rental agency").  The government did not appeal the district court's suppression of the evidence seized from the glove compartment. See 547 F.2d at 83.  Kelly, however, successfully sought reversal of the district court's failure to suppress the derivative evidence.  547 F.2d at 86.  The Eighth Circuit held that "the government clearly failed to establish that the [derivative] evidence would have inevitably been gained without the illegal search [of the glove compartment]."  547 F.2d at 86 (emphasis added).

[12]  Like our reference to Smith and Miller, our reference to Kelly does not mean that we endorse its holding.

13

government's view that Cooper's rights were functionally equivalent to those of an unauthorized driver at the time of the search. The only "car" case that the government advances is United States v. Wellons, 32 F.3d 117 (4th Cir. 1994), cert. denied, 513 U.S. 1157 (1995), upon which the district court also relied. In that case, Wellons's co-defendant rented a car from Hertz Corporation and listed himself as the sole authorized driver. With the co-defendant's permission but in his absence, Wellons drove the car. 32 F.3d at 118. When law enforcement officers stopped Wellons for speeding, the K-9 unit indicated the presence of drugs in the car. 32 F.3d at 118-19. Law enforcement officers searched the car without a warrant and found cocaine and heroin in Wellons's luggage. 32 F.3d at 119. Hertz later instructed the officers to impound the car since Wellons did not have its permission to drive the vehicle. 32 F.3d at 118-19 & n.2.

The district court denied Wellons's motion to suppress the drugs. See 32 F.3d at 118. On appeal, the Fourth Circuit addressed whether the officers' warrantless search of the car violated Wellons's Fourth Amendment rights. 32 F.3d at 119. The court held that Wellons, as "an unauthorized driver of the rental car, had no legitimate privacy interest in the car." 32 F.3d at 119.[13]

Unlike Wellons, Cooper was listed on the rental contract as an authorized driver. Cooper and Budget, in contrast to Wellons and Hertz, were in privity of contract (albeit in

---

[13] But cf. United States v. Muhammad, 58 F.3d 353, 354-55 (8th Cir. 1995) (holding that the driver lacked standing to challenge search of a rental car because he failed to present "at least some evidence of consent or permission" from either the rental company or "the only person authorized under the lease agreement to drive the vehicle") (per curiam).

breach) at the time of the search. As such, Cooper's expectation of privacy was materially different from that of Wellons.[14]

Recognizing the reasonableness of Cooper's expectation of privacy also reconciles with the hotel/motel/locker cases upon which the government relies to support its argument that one loses a legitimate expectation of privacy in rented property the moment the rental contract expires. In United States v. Allen, 106 F.3d 695, 697 (6th Cir.), cert. denied, 117 S. Ct. 2467 (1997), Allen rented a motel room for two nights. After check-out time on the second day, the motel manager went to Allen's room to ask him whether he wanted to extend his stay. In the room, the manager could not find Allen but did find his marijuana. Before contacting law enforcement, the manager changed the lock so that Allen could not reenter. Law enforcement officers arrested Allen upon his return, obtained a warrant and seized the marijuana. 106 F.3d at 697. The Sixth Circuit affirmed the district court's denial of Allen's motion to suppress, holding that "[o]nce the manager, through private action, took possession of the motel room, Allen could no longer assert a legitimate privacy interest in its contents." 106 F.3d at 699 (internal footnote omitted).

Budget, unlike the motel manager in Allen, had not repossessed the rented property prior to the challenged search. Further, the government's argument that the law enforcement officers acted as Budget's repossession agent lacks merit because, unlike the

---

[14] The actions of the rental companies reflect the difference between these relationships. Hertz instructed the police to "impound" the car, whereas Budget wanted to merely "tow" it. See Wellons, 32 F.3d at 119.

motel manager's changing the lock on the door to Allen's room, the FHP's assertion of control over Cooper's rental car was not "private action." 106 F.3d at 699.

Just as distinguishable as <u>Allen</u> are <u>United States v. Huffhines</u>, 967 F.2d 314 (9th Cir. 1992); <u>United States v. Reyes</u>, 908 F.2d 281 (8th Cir. 1990), <u>cert. denied</u>, 499 U.S. 908 (1991); and <u>United States v. Ramirez</u>, 810 F.2d 1338 (5th Cir.), <u>cert. denied</u>, 481 U.S. 1072 (1987). In <u>Huffhines</u>, the Ninth Circuit held that law enforcement's warrantless search of Huffhines's motel room did not violate the Fourth Amendment because the motel assistant manager consented "after he repossessed the room for nonpayment of rent." 967 F.2d at 318.[15] In <u>Reyes</u>, the Eighth Circuit held that law enforcement's warrantless search of Reyes's storage locker did not violate the Fourth Amendment because his rental contract had expired eleven days prior to it and, therefore, Reyes "could not have had a legitimate expectation of privacy at the time of the search." 908 F.2d at 286. The <u>Reyes</u> court emphasized the fact that the landlord had obstructed the lock on account of Reyes's nonpayment. 908 F.2d at 286. Finally, in <u>Ramirez</u>, the Fifth Circuit held that a hotel manager's search of a room after check-out time did not violate the Fourth Amendment because the defendants had "abandoned" the room and, therefore, "forfeited their reasonable expectation of privacy in it." 810 F.2d at 1341.[16]

---

[15] The district court cited <u>Huffhines</u> as the only support for its conclusion that "[a]fter the rental agreement expired and he failed to seek its extension, [Cooper] did not have a legitimate expectation of privacy in the rental car."

[16] The <u>Ramirez</u> court also concluded that the hotel manager's repossession and search did not constitute state action since he acted without direction from law enforcement. <u>See</u> 810 F.2d at 1341-42.

16

Like <u>Allen</u>, <u>Huffhines</u>, <u>Reyes</u> and <u>Ramirez</u> involved repossession prior to the presence of law enforcement. Unlike Budget, the lessors in <u>Huffhines</u>, <u>Reyes</u> and <u>Ramirez</u> took affirmative steps to regain control of the rented property. In <u>Huffhines</u> and <u>Reyes</u>, the lessors changed or obstructed the locks. <u>Huffhines</u>, 967 F.2d at 316; <u>Reyes</u>, 908 F.2d at 284. In <u>Ramirez</u>, the lessor entered the room and prepared it for new occupants. 810 F.2d at 1340. Budget, on the other hand, did not report the car stolen, seek an arrest warrant, issue notice of its intent to repossess or otherwise attempt to enforce any of its contractual or legal rights against Cooper at any time prior to the FHP's phone call on January 24.[17]

If we were to accept the government's position, a driver could not expect privacy in a rental car even one minute after the rental contract expired. In other words, the rental company's dormant right of repossession would govern the scope of the driver's Fourth Amendment protections. The Supreme Court, however, highly disfavors such hard-and-fast rules. See <u>Rakas</u>, 439 U.S. at 143 (stating that "arcane distinctions developed in property and tort law . . . ought not . . . control" the reasonableness of an expectation of privacy) (citing <u>Jones v. United States</u>, 362 U.S. 257, 266 (1960)).[18] Declining to adopt

---

[17] <u>Cf.</u> Hughes v. State, 897 S.W.2d 285, 305 (Tex. Cr. App. 1994) (holding that the defendant lacked standing to challenge the search of rental car because the rental company signed a warrant for the defendant's arrest nearly two months after the rental contract expired), <u>cert. denied</u>, 514 U.S. 1112 (1995).

[18] <u>See also</u> <u>Kelly</u>, 414 F. Supp. at 1146 ("The fact that the rental agency may have had a legal right to repossess the automobile does not strip defendant of Fourth Amendment protection."). <u>See generally</u> Blumel v. Mylander, 954 F. Supp. 1547, 1556 (M.D. Fla. 1997) ("Constitutional duties trump contractual limitations!").

this interpretation of the Fourth Amendment is especially appropriate where, as here, a simple phone call could have extended the rental contract past the date of the warrantless search. Cooper's failure to call Budget to extend the due date four days may have subjected him to civil liability, but it should not foreclose his ability to raise a Fourth Amendment challenge to the FHP's search of the rental car in a criminal proceeding. In our view, Cooper retained a sufficient amount of control and possession over the rental car for it to fall within the zone of constitutional sanctity.

Accordingly, and upon careful consideration of the circumstances of this case, we hold that society is prepared to accept as reasonable Cooper's expectation of privacy in the overdue rental car and, therefore, he has standing to challenge law enforcement's search of the glove compartment, the trunk and the items therein.

## V. CONCLUSION

For the foregoing reasons, we (1) affirm the district court's finding that the FHP validly stopped Cooper; (2) reverse the district court's conclusion that Cooper lacked standing to challenge the warrantless search of the rental car and the items therein; and (3) remand this case to the district court with instructions to address the merits of Cooper's motion to suppress and for further proceedings consistent with this opinion.[19]

**AFFIRMED IN PART; REVERSED and REMANDED IN PART.**

---

[19] Because we leave it to the district court to address the constitutionality of the search, we do not vacate Cooper's conviction and sentence. Cf. Miller, 821 F.2d at 546, 549-51 (addressing the merits of the driver's motion to suppress, even though the district court did not, apparently because the parties fully briefed the issues and the facts surrounding the stop and search mirrored those of the "nearly identical" case of Smith).

18