[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16031
Non-Argument Calendar

_____

D. C. Docket No. 02-00045-CR-4-SPM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD L. HALL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 24, 2006)**

Before DUBINA, WILSON and PRYOR , Circuit Judges.

PER CURIAM:

Appellant Richard L. Hall ("Hall") appeals his conviction and sentence following a jury trial for conspiracy to distribute and possess with the intent to distribute more than 5 kilograms of cocaine and more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and (b)(1)(A)(iii) and 846. On appeal, Hall argues that the district court erred as a matter of law when it denied his motion to suppress a firearm and money seized during a May 1, 2001, investigatory stop of his vehicle. The investigatory stop occurred after a confidential informant ("CI") told police that persons in a vehicle matching the description of Hall's vehicle would be traveling to a particular location to sell drugs. Hall asserted that there was no evidence from which the court could determine whether the CI was reliable, or even if the CI existed, because the officer who testified at the suppression hearing could not identify the CI. Further, the police could not produce the name or any documentation concerning the CI.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's factual findings for clear error and review the district court's application of the law to those facts *de novo*. *Id.* These factual findings include the district court's credibility determinations, to which we will "accord considerable deference." *United States. v. Ramirez-Chilel*, 289 F.3d 744, 749

(11th Cir. 2002) (citation and internal quotation marks omitted). "[A]ll facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). "The individual challenging the search has the burdens of proof and persuasion." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment's protections extend to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002). For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a "reasonable suspicion" to believe that criminal activity "may be afoot." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "Reasonable suspicion" on the part of the officers is more than a hunch and requires at a minimum some objective justification for the investigatory stop. *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir. 1995). When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273, 122 S. Ct. at 750.

3

Reasonable suspicion, however, does not exist based solely on anonymous telephone tips, absent sufficient corroboration, including whether the informant callers had the ability to predict the defendant's future actions. *Lee*, 68 F.3d at 1271. For example in *Lee*, "[t]he fact that the officers found a car precisely matching the caller's description" is only a presently observable fact. *Id.* Anyone could have "predicted" that fact, but the informant caller's ability to predict future behavior demonstrated inside information. *See id.*

We conclude from a review of the record that the totality of the circumstances in this case supports the district court's finding that the officers conducting the traffic stop had a "particularized and objective basis" for suspecting legal wrongdoing. The district court did not err in denying Hall's motion to suppress because (1) the officer at the suppression hearing testified that the CI was reliable because the CI had previously made at least three successful controlled drug buys; (2) it was reasonable to conclude that the testifying officer would be unable to recall the identity of the CI because the suppression hearing took place more than four years after the stop; (3) the CI provided detailed information about the make, model, color, and license plate number of Hall's vehicle and accurately described its occupants; (4) the CI's information predicted Hall's future behavior; and (5) law enforcement officers were able to corroborate the information before initiating the stop. Accordingly, we affirm Hall's conviction.

4

Hall also argues that district court erred in imposing a two-level firearm enhancement for the firearm found in his car at the time of the investigatory stop because Hall did not possess the firearm at the site of any crime, and it was not connected with the offense. Hall further argues that it was clearly improbable that he used the firearm in the offense because he did not know that his co-conspirator left the gun in the car.

We review for clear error the district court's findings of fact when it enhances a defendant's sentence in cases involving U.S.S.G. § 2D1.1(b)(1), and review the application of the sentencing guidelines *de novo*. *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999).

Section 2D1.1(b)(1) provides a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). Once the government has shown that a firearm was present at the site of the charged conduct, "'the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.'" *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 221( 2005) (quoting *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995)).

In *United States v. McClain*, 252 F.3d 1279, 1288 (11th Cir. 2001), we held that a defendant possessed a firearm "in connection with" the offense of check counterfeiting when he kept a gun in the vehicle that he used to drive co-conspirators to the banks at which they negotiated counterfeit checks. (applying former U.S.S.G. § 2F1.1(b)(7)(B)). Similarly, in *United States v. Rhind*, 289 F.3d 690, 694-96 (11th Cir. 2002), we concluded that the firearms found in the defendant's car with the counterfeit money were used "in connection with" the counterfeiting offense because the firearm's presence "protected the counterfeit money from theft" while the defendants executed the felony. (applying U.S.S.G. § 2K2.1(b)(5)).

In the instant case, the district court enhanced Hall's sentence based on his own possession of the firearm, not his co-conspirator's possession. First, we conclude that the district court did not clearly err in finding that Hall possessed a firearm at the site of the charged conduct because (1) one of Hall's co-conspirators testified that the firearm had been on the console, and, as soon as the patrol car began flashing its blue lights, Hall tried to push the firearm under his seat; (2) the firearm was found in Hall's vehicle, which he used to deliver drugs that same day; and (3) the money seized during the investigatory stop was proceeds from drug sales. Accordingly, we are persuaded that the fact that Hall had a firearm in his vehicle, which he had used to deliver drugs and collect the proceeds that same day,

6

is sufficient to show his possession of the firearm at the site of the charged conduct.

Second, the burden then shifted to Hall to establish that it was clearly improbable that the firearm was connected to his drug sales earlier in the day. Although Hall claims that he did not know that the gun was in the vehicle, the court did not clearly err in discrediting this assertion because (1) Hall knew that the gun was in his car before he was stopped by the police because Hall placed the gun under his seat when the police stopped his car; (2) officers on the scene confirmed that they saw Hall making movements as if he was placing something under his seat; and (3) even if Hall's co-conspirator left the gun in the vehicle earlier in the day, Hall did not establish that it was clearly improbable that the gun had been in the vehicle when Hall was selling drugs earlier in the day. Accordingly, Hall did not meet his burden of showing that it was clearly improbable that the gun was connected with his drug trafficking activities.

For the above-stated reasons, we affirm Hall's conviction and sentence.

**AFFIRMED.**

7