[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16352
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cr-00487-RDP-TMP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOMMIE DARRELL BLACKMON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 24, 2013)

Before HULL, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Tommie Blackmon appeals his conviction for being a felon in possession of

a firearm, in violation of 18 U.S.C. § 922(g)(1).  Blackmon argues that the district

court erred by denying his motion to suppress a firearm found on him during a traffic stop.  Although a police officer testified that he observed Blackmon commit three turn-signal violations and also suspected that the rear windows on Blackmon's SUV were unlawfully tinted, Blackmon argues that he committed no traffic violations that would have given the police probable cause to make the stop. After careful review, we affirm Blackmon's conviction.

I.

On February 17, 2011, at about 11:00 a.m., Deputy Jacob Bradley of the Jefferson County Sheriff's Office was driving through Ensley, Alabama in his marked patrol car.  At the intersection of Avenue E and 20th Street, Deputy Bradley observed Blackmon, who was driving a Yukon SUV, turn left onto Avenue E without a turn signal.  Deputy Bradley turned around and followed Blackmon for several blocks.  Bradley next observed Blackmon's SUV drive up to the intersection of Avenue E and 21st Street, where Blackmon this time activated his turn signal just as he was turning onto 21st Street.  Deputy Bradley then saw Blackmon stop at the intersection of 21st Street and Avenue D, again activate his turn signal, and turn onto Avenue D.  As Deputy Bradley was following Blackmon, he also noticed that the rear windows on Blackmon's SUV were tinted darkly and suspected that there could be a tint violation.  After observing these events, Deputy Bradley turned on his blue lights and stopped Blackmon.

2

When the cars were stopped, Deputy Bradley approached the passenger's side of Blackmon's car.  As Deputy Bradley asked for Blackmon's driver's license, he noticed that Blackmon was nervous and detected a strong odor of marijuana coming from inside the vehicle.  Deputy Bradley then returned to his patrol car and called for backup.  Bradley also ran Blackmon's information through law enforcement databases and found that Blackmon had an extensive criminal history.

Deputies Nathan Nichols and Brian Burton then arrived at the scene.  While Deputy Bradley issued Blackmon his traffic warnings, Deputy Nichols approached the driver's side of Blackmon's vehicle and asked Blackmon "if he had any weapons on him."  Blackmon stated that he had "a weapon for his protection" on his waistband but did not have a permit.  Deputy Nichols instructed Blackmon not to touch the weapon, reached into the vehicle, and grabbed a gun from Blackmon.

Deputy Nichols also asked Blackmon if he had marijuana in the car, and Blackmon said that he did.  Blackmon then opened the center console, removed marijuana, and handed it to Deputy Burton.  Deputy Nichols then arrested Blackmon.

Blackmon was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Before trial, Blackmon moved to suppress the gun, alleging that the traffic stop was illegal because Deputy Bradley lacked probable cause to stop him.  After a hearing, the district court denied Blackmon's

3

motion to suppress the gun, finding that there was sufficient probable cause to stop Blackmon and seize the gun.  Blackmon pleaded guilty and was sentenced to 100 months imprisonment.  In his written plea agreement, Blackmon preserved the right to appeal the district court's denial of his motion to suppress.

## II.

Blackmon argues that the district court improperly found that the police had probable cause to stop him.  Regarding his first purported turn-signal violation, Blackmon argues that he never actually made a turn, but instead was traveling on the same road as Deputy Bradley.  For the second alleged violation, Blackmon argues that Deputy Bradley could not have observed whether Blackmon used his signal because he and Bradley were traveling in opposite directions.  With respect to the third alleged violation, Blackmon contends that Deputy Bradley was wrong because Blackmon in fact activated his turn signal before turning and made the turn "with reasonable safety," satisfying the requirements of Alabama law. Blackmon argues as well that even if he did not properly activate his turn signal before turning, his conduct did not constitute probable cause to justify a traffic stop.  Finally, Blackmon argues that his window tint could not be in violation of Alabama law because his windows were factory default.

We review a district court's denial of a motion to suppress under a mixed standard, reviewing the court's findings of fact for clear error and the application

of law to those facts de novo.  United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007).  The district court's factual findings are construed in the light most favorable to the prevailing party.  United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).  Furthermore, we "allot substantial deference to the factfinder, in this case, the district court, in reaching credibility determinations with respect to witness testimony."  United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003) (quotation marks omitted).

A police officer lawfully initiates a warrantless traffic stop when he or she has probable cause to believe that a traffic violation has occurred.  Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) ("[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.") (quotation marks omitted).  "Probable cause requires that the facts and circumstances within [an officer's] knowledge and of which [the officer] ha[s] reasonably trustworthy information [be] sufficient to warrant a prudent man in believing that the person seized" has committed a traffic violation.  United States v. House, 684 F.3d 1173, 1199 (11th Cir. 2012) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964)).  For example, we have held that an officer has probable cause to initiate a traffic stop when he or she observes a traffic

5

violation.  United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (holding that an officer had probable cause to stop a vehicle after observing that it failed to signal a lane change).

We affirm because Deputy Bradley initiated a traffic stop after observing Blackmon commit three turn-signal violations.  Under Alabama law, drivers can turn only after "giving an appropriate signal."  Ala. Code § 32-5A-133(a).  Also, the turn signal must be given at least 100 feet before turning.  Id. § 32-5A-133(b).  Based on Deputy Bradley's testimony that Blackmon failed to properly activate his turn signal three times, the district court found that there was probable cause to conduct a traffic stop.[1]  On this record, grounded upon credibility choices made by the district court, we see no basis to question that finding.  See United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) (affirming district court's finding that there was "no question" that the officers had observed defendant run the stop sign); McPhee, 336 F.3d at 1276 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quotation omitted).

---

[1] Although Blackmon also argues that his window tint was legal under Alabama law, we conclude that Deputy Bradley had probable cause to initiate the traffic stop because of the three turn-signal violations.  Accordingly, we do not need to reach Blackmon's argument about his vehicle's window tint.

Because the traffic stop was justified by probable cause, the district court did not err in denying Blackmon's motion to suppress the gun found on him during the stop.

**AFFIRMED.**